## JAMES CHALMERS *vs.* A. A. WHITTEMORE

### December 1, 1875.

New Trial—Communication with Juror.—An unauthorized communication made to a juror in a cause, pending the trial, is not ground for a new trial if it be apparent that it could not have influenced the mind of the juror in favor of the successful party.

Same—Expression of Opinion by Juror during Trial.—If a juror in a cause, pending the trial, express to a stranger to the cause an opinion upon the case, it is not ground for a new trial if it be apparent that the opinion was formed upon the proceedings and evidence in the cause.

**Evidence of Reputation of Slate Quarry—Incompetent Question Cured by Answer.**—Where the quality of slate used in a particular work is in question, it is incompetent to ask a witness what was the reputation of the quarry from which it was obtained. But if, in answer, the witness, apparently from his own knowledge, states, not the reputation of the quarry, but the quality of the slate yielded by it, the error in admitting the question does not prejudice, and is no ground for reversal.

Defendant, being the contractor for building a church at Minneapolis, made a contract with plaintiff to slate the roof, being 121 48-100 squares, at the price of $15.00 per square, plaintiff to furnish the slates, which, as well as the work, were to be of the best quality. When plaintiff had finished one side of the roof, being about fifty-seven squares, the defendant refused to permit him to complete the work, whereupon plaintiff brought this action for damages for defendant's breach of the contract. In his answer the defendant alleged that the slate furnished and work done were of inferior quality. At the trial in the court of common pleas of Hennepin county, before *Young*, J., the principal question was upon the quality of the slate. Some evidence was introduced by defendant tending to show that plaintiff was to do the work to the acceptance of the building committee of the church. There was evidence that the cost of the slate, at the church, was $10.00 per square, and that the cost of preparing and laying it was from $2.00 to $3.00 per square, so that plaintiff's profit under his contract would be from $2.00 to $3.00 per square. The court instructed the jury that if plaintiff had complied with the contract in respect of the quality of the material furnished and work done, and was prevented by defendant from completing the contract, he was entitled to recover for the work actually done, at the contract rate, and was also entitled to recover the profit he would have made in laying the slate on the remainder of the roof, under the contract, together with any loss he might have sustained on the slate procured to perform the contract and left on his hands, and for any loss of time from being delayed by defendant in the performance of the contract.

The jury found a verdict for plaintiff for $1,083.00. The defendant moved for a new trial on the ground of misconduct of the jury, excessive damages, and errors of law duly excepted to. In support of the first ground he read the affidavit of O. A. Pray, chairman of the building committee of the church, and a witness for the defendant, to the effect that after counsel had addressed the jury, and before the charge of the court, one of the jurors, named Copeland, called at his office, and asked him if he intended to accept that work of Chalmers, to which the affiant replied that he should not, according to his present knowledge of it; and also the affidavit of one Wishart, also a witness for defendant, as to a communication made to him during the trial by a juror named McHerron, the substance of which affidavit, and the exceptions taken at the trial, are stated in the opinion. The motion was denied, and defendant appealed.

*Merrick & Morrison*, for appellant.

*Beebe & Shaw*, for respondent.

GILFILLAN, C. J. Where any unauthorized communication is made to a juror in a cause on trial, which may have influenced his mind in favor of the successful party, a new trial will be granted for that reason; but if it is apparent that the communication could not have had such influence, it is no ground for a new trial. In this case the statement made by the defendant's witness Pray to the juror Copeland tended to support the defence, and to prejudice the juror in favor of defendant, but could not possibly influence him in favor of plaintiff.

The remark by the juror McHerron to the witness Wishart, made while the trial was pending, that the defendant " was catching it, and was making a fool of himself," showed that the juror had at that time got an impression of the case, apparently from the proceedings already had in the trial, but not that there was any prejudice in his mind against the defendant, or any impression other than such as the evidence may have produced; and his communicating

such impression was misconduct, for which he might have been punished by the court below, but furnishes no ground for a new trial.

We can see from the evidence how the jury may have properly arrived at the damages allowed, and we cannot say they were not justified as to the amount.

As the plaintiff had testified that he had been engaged in the kind of work in question during the year previous to the trial, it was evident that he must have had skill and knowledge of that kind of work, beyond that which men generally have, sufficient to justify the court in allowing him to state what was the quality of work done.

There was sufficient evidence to go to the jury on the point that the work was done as required by the contract, and, so far as the evidence presented the case, the charge of the court left it to the jury fairly.

The question put to the witness Hugh W. Greene upon the issue as to the quality of the slate used, " What is the reputation of the quarry ? "—referring to the quarry from which the slate was taken—was certainly incompetent. Proof of reputation is sometimes admitted, from necessity, to establish particular facts—as to prove the character of an individual ; but the quality of slate yielded by any designated quarry is susceptible of proof without the necessity of resorting to proof of reputation. Had the witness stated the reputation in answer to the question, the error would have been material. But his answer was—he having shown that he knew the quarry very well, and had been at and examined it frequently—" To the best of my knowledge, it is the best slate produced in Slatington, with the exception of one quarry." He here speaks of the quality of the slate, and not the reputation of the quarry. The error in over-ruling the objection did not result in any prejudice.

Order affirmed.